FILED
SUPERIOR COURT
OF GUAM

2022 APR -7 PM 4: 29

CLERK OF COURT

BY:_____

IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. Cf0378-21 |
| | ) | |
| | ) | |
| vs. | ) | DECISION AND ORDER RE. |
| | ) | COMPETENCY TO BE PROCEEDED |
| DRAVIN JOHN JOSEPH QUINATA, | ) | AGAINST AND SENTENCED; |
| DOB: 11/06/1995 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## A. INTRODUCTION

This matter came before the Court on December 13, 2021 for a Further Proceeding Re. Defendant's Competency.[1] Assistant Attorney General Alysa Draper Dehart represents the People, and Assistant Public Defender Zachary Taimanglo represents Dravin John Joseph Quinata ("Defendant"). During the hearing, both counsels accepted the Forensic Evaluation (the "Evaluation") filed by Dr. Juan Rapadas ("Dr. Rapadas") with the Court on October 11, 2021 and submitted the issue of Defendant's competency to the Court for its determination. However, Attorney Taimanglo requested that the Court review prior forensic evaluations performed by Dr. Rapadas in Defendant's prior cases: CM0452-19, CM0470-19 and CM0298-21.[2] On

---

[1] Defendant placed his mental state at issue in this case during his Arraignment on September 13, 2021. Magistrate Judge Jonathan R. Quan treats such NGRI pleas as "asserted," however, Defendant confirmed that he neither asserted nor waived his right to speedy trial pursuant to Guam's speedy trial statute. *Further Proceedings Hrg. on 10/18/2021* at 9:16:13 AM (Oct. 18, 2021).

[2] Defendant also submitted the Forensic Evaluation for CM0298-21, which is assigned to the Honorable Vernon Perez. However, because the evaluation in CM0298-21 is based upon the same tests and observations and reaches

December 13, 2022, Attorney Taimanglo submitted the prior evaluations under seal and the Court took the matter under advisement. Having duly considered the Defendant's Forensic Evaluation in this case as well as in previous cases identified herein, the parties' oral arguments, and the applicable law, the Court now issues the following Decision and Order, finding that the Defendant is competent to stand trial, rejecting Defendant's plea of Not Guilty By Reason of Mental Illness, Disease, or Defect, and further finding that the Defendant may have available a "diminished capacity" defense to the charge against him. Defendant has also been deemed eligible for diversion to the Adult Drug Court I or III.

The Court also finds that all forensic reports submitted to the Court indicate to the Court that the Defendant would benefit from the assistance of the Office of the Public Guardian regardless of the outcome of this case; therefore, the Court will invoke the assistance of the Public Guardian, pursuant to 7 GCA § 3112, in fashioning an appropriate post-adjudication plan for the Defendant.

## B. FACTUAL DETERMINATIONS AND DISCUSSION

On May 28, 2019, Defendant was arrested and charged with Possession of a Schedule II Controlled Substance (As a Third Degree Felony).[3] On September 13, 2021, Defendant pled Not Guilty By Reason of Mental Illness, Disease, or Defect ("NGRI plea"). See Minute Entry (Sept. 13, 2021). Pursuant to 9 G.C.A. §7.25, the Client Services and Family Counseling Division of the Superior Court of Guam ("CSFC") arranged for Defendant to undergo a forensic evaluation with a qualified psychologist. See Order for Forensic Evaluation (Sep. 14, 2021).

---

the same conclusion of competency as set forth in the instant Evaluation, it is not specifically separately discussed herein.

[3] Defendant was charged together with his Co-Defendant Peter Rey Quinata, who was charged with Possession of a Schedule II Controlled Substance (As a third Degree Felony), Hindering Prosecution (As a Misdemeanor) and Destroying Evidence (As a Misdemeanor). *Indictment* (Jul. 29, 2021).

Dr. Juan Rapadas, an expert clinical psychologist at CSFC, conducted the forensic evaluation on Defendant on October 4, 2021. See Forensic Evaluation at 2 (Oct. 11, 2021). Dr. Rapadas opined that Defendant is competent to be proceeded against and to be sentenced "based on the test results, the clinical interview, observations of Mr. Qunata, history, and current mental status." Id. at 6.

During the hearing to discuss the Forensic Evaluation, counsels accepted Dr. Rapadas's findings and conclusion; however, Defendant's counsel sought the Court's permission to submit prior forensic evaluations conducted in Defendant's several matters for consideration in determining how to proceed in this case. With the Court's approval, these prior forensic evaluations were submitted under seal on December 13, 2021.[4] Following review of the record in this case, the Court makes the following findings:

**1. The Defendant is competent to be proceeded against and sentenced.**

As neither party disputes the findings set forth in Dr. Rapadas's report, the Court adopts them as its own findings of fact and, therefore, incorporates them here. Defendant has a DSM 5 diagnosis which includes the following: Unspecified Schizophrenia Spectrum and Other Psychotic Disorders, Rule out Substance Induced Psychosis, Amphetamine Use Disorder, by history, in partial remission, in a controlled environment; Alcohol Use Disorder, by history, in partial remission, in a controlled environment; Cannabis use Disorder, by history, in partial remission, in a controlled environment; Nicotine Use Disorder, by history, Rule out Borderline Intellectual Functioning, History of Special Education Services, Lack of Employment, Homeless and Legal Problems. Evaluation at 8.

---

[4] Although submitted under seal, these forensic evaluations are not confidential, as they were issued as a matter of public record and pursuant to the provisions of 9 GCA §7.25. Nevertheless, the Court considers them as properly submitted for the Court's consideration in the instant case.

Of specific importance in considering the Defendant's competence to be proceeded against, during a previous examination of the Defendant in 2020 for criminal case numbers CM0452-19 and CM0470-19 (the "2020 Evaluation"), Dr. Rapadas administered the KBIT-2 or Kaufman Brief Intelligence test, Second Edition ("KBIT-2 Test") to measure verbal and non-verbal intelligence as well as a Mini Mental Status Exam ("MMSE").[5] As a result of the KBIT-2 Test, Defendant has a verbal age score of 12.4 years of age and his non-verbal score age is equivalent to a 9.9 year old and those findings remain unchanged. 2020 Evaluation at 6. As a result of the MMSE in 2020, Defendant scored well above the cutoff score of 23, which is interpreted as "someone who is likely and currently not suffering from overall cognitive weaknesses and/or dementia. So while his non-verbal IQ score was in the below average range, his innate intelligence was stable over the years and his mental status was good." Id. at 5. Currently, Dr. Rapadas found that the Defendant appeared clinically and mentally no different now than in 2020. Evaluation at 5.

"A defendant is incompetent to be proceeded against in a criminal action if, as a result of mental illness... he is unable (1) to understand the nature of the proceedings, (2) to assist and cooperate with counsel, (3) to follow the evidence, or (4) to participate in his defense." See 9 G.C.A. § 7.37(a)(1)-(4). Thus, in considering the question of competency to be proceeded against and to be sentenced, Dr. Rapadas, applying the factors articulated in *Dusky v. United States,* 420 U.S. 162 (1960), taken together with this observations of the Defendant as well as the Defendant's performance in the KBIT-2 Test and MMSR, opined as follows: "Taken all data in total and in alignment with the above competency standard, Mr. Qunata is currently

---

[5] Forensic Evaluation in CM0470-19 and CM0452-19 (Feb. 10, 2020).

competent to be proceeded against and to be sentenced based on the test results, the clinical interview, observations of Mr. Quinata, history, current mental status, and current cognitive testing." Id. at 6.

Dr. Rapadas found that Defendant has the "present ability" to work with counsel and to "discuss his legal strategy...with a fair degree of rational understanding," with the caveat that counsel would "need to take due diligence to insure Mr. Quinata understands the legal process and the concepts." Evaluation at 6. However, Dr. Rapadas also noted that Defendant was aware of the outcomes of his two 2019 cases which were dismissed after a finding of NGRI in the 2020 Evaluations. Id. Dr. Rapadas also found as follows:

> Dravin should be able to sit, be polite and respectful to his counsel. He should be able to and be expected to behaviorally comport himself well in court. He also appears to be capable of testifying appropriately with help and advisement from his attorney. He could be able to provide wholly consistent accounts of the some historical events and the events that led to the arrests if he is able to recall. He should also be able to manage the demand of a trial process.

Id. Importantly, Dr. Rapadas's conclusions as to Defendant's competency to be proceeded against and to be sentenced do not diverge from his earlier findings in the 2020 Evaluation. Evaluation at 6 ("In the previous forensic exam from early 2020, he was also found competent."). For these reasons, the Court finds that the Defendant is competent to be proceeded against and be sentenced in this case.

**2. Dr. Rapadas opines that the Defendant did not lack substantial capacity**

Unlike Dr. Rapadas's conclusion in the 2020 Evaluation (that at the time of the relevant incidents therein Defendant lacked substantial capacity to know or understand the wrongfulness of his conduct), in the current evaluation, Dr. Rapadas found that, although he is "probably" suffering from some form of mental illness, "that illness ... did not cause Dravin to lack the

substantial capacity to know and understand his behaviors, that his conduct was wrongful, and to control his actions in regards to the above charges." Evaluation at 7.[6] It is, however, Dr. Rapadas's opinion that "while he was not lacking substantial capacity for the above charge, Dravin may have had some diminishment of his capacity, since we know that schizophrenia can affect someone's judgment, coping styles, and life choices." Id.

Based upon the forensic evaluation, the Defendant can advance any diminished capacity defense he may have during a trial of this matter. "Diminished capacity … is not an affirmative defense that justifies or excuses conduct otherwise criminal; but rather serves to negate the mens rea element of the crime charged. See *People v. Jung*, 2001 Guam 15, ¶ 37. "Generally, the doctrine of diminished capacity allows a criminal defendant to introduce evidence of a mental disease, defect or abnormality during trial." Id. at ¶ 30 (emphasis added). This is so a defendant may convince the factfinder that, although legally sane, they were "not capable of forming the necessary mental state required of the crime" for which they are charged. Id. at ¶ 30. Guam courts allow the admission of diminished capacity evidence at trial to negate the mens rea elements of both general and specific intent crimes. Id. at ¶ 39. Following legal precedent, the defense of diminished capacity is available to the Defendant at trial.

### 3. Defendant is eligible for diversion to the Adult Drug Court.

Having determined that Defendant is competent to be proceeded against and to be sentenced, and that, at trial, the Defendant may advance a diminished capacity defense, the Court notes that Defendant has also been deemed eligible for an Adult Drug Court diversion to

---

[6] The Court finds that in CM0298-21, it appears that the Defendant was found to be competent to enter a guilty plea and to be sentenced, as Defendant entered his GUILTY plea to the offense of Disorderly Conduct (as a Petty Misdemeanor) and a Judgment of Conviction was issued on January 3, 2022. See, Plea Agreement (Dec. 2, 2021); Minute Entry (Dec. 2, 2021); Judgment of Conviction (Guilty Plea Agreement)(Jan. 3, 2022).

either ADC I or ADC III. People's Decl. re. Adult Drug Court Eligibility (Oct. 18, 2021). The Court is concerned, however, that due to the highly supervised nature of the probationary period, that Defendant may not be appropriate for ADC *unless* his co-occurring mental health disorders are also addressed and treated as part of any diversion to ADC. Because transfer to the Mental Health Court docket will likely not be accepted by the MHC judge as he does not appear to qualify for such transfer due to the finding of competency and no lack of substantial capacity, the Court finds that the Defendant is capable of working with his counsel to discuss this potential resolution of this matter without trial which might satisfy the Court's concerns. It is noteworthy that evidence of Defendant's capacity to accept a plea agreement and to perform thereunder can be found in his plea agreement in CM0298-21 before Judge Perez.[7]

**4. The Court invites the parties to consider whether involvement by the Office of the Public Guardian, on a temporary or permanent basis, is appropriate in this case.**

The Court is concerned with the provisions of Dr. Rapadas's report which identify the Defendant's several diagnoses and co-occurring disorders which may lend to future criminal behavior if the Defendant does not comply with a mental health/substance use treatment plan monitored by the courts with the assistance of support or assistance. Of particular importance in fashioning a just outcome of this case, if diversion to ADC is chosen rather than trial, is providing the Defendant with the tools necessary for successful participation and graduation from such program. Dr. Rapadas opined as follows:

> It is clear that Dravin would benefit greatly from his continuing GBHWC psychiatric treatment. Dravin could also probably benefit from some periodic

---

[7] In *People v. Qunata, Superior Court of Guam Criminal Case No. CM0298-21*, Defendant pled GUILTY to and was convicted of Disorderly Conduct (As a Petty Misdemeanor). Plea Agreement (Dec. 9, 2021); Judgment of Conviction (Jan. 3, 2022). The Court, however, sentenced Mr. Quinata to time served and closed the matter without any further supervision.

Individual counseling sessions. He seemed to open up, enjoy, and appreciate the attention given to him by this evaluator during the forensic exam. He is open to talk and connect with professionals. Finally, Dravin is in dire need of good case management with a social worker to help him navigate through the application process of the many entitlements he may be eligible for (e.g., GHURA, SNAP, Welfare, Medicaid, ICAN Resources, and Homeless programs). Unfortunately, his mother and grandmother had relocated to California and they were helping support Dravin and his younger brother.

Evaluation at 8. Unfortunately, his success is unlikely if he does not have a reliable support system.

7 GCA § 3112(a)(5) establishing the Office of the Public Guardian provides that the Public Guardian "may offer guidance and counsel, without court appointment as guardian, to those persons who request such assistance or to those on whose behalf it is requested for the purpose of encouraging maximum self-reliance and independence of such persons, and avoiding the need for appointment of a guardian." Thus, the Public Guardian may provide services to the Defendant to assist him not only with compliance with any treatment plan or court supervised probation, but more importantly, with applying for benefits for which he may be eligible, including GHURA, SNAP, Welfare, Medicaid, ICan Resources and Homeless programs. It would be the Court's plan, therefore, to include the Public Guardian to assist the parties in discussing services available to the Defendant at the conclusion of this case, regardless of how or in what manner this case is adjudicated.

## C.  CONCLUSIONS OF LAW; FURTHER PROCEEDINGS

For the reasons started above, the Court makes the following findings of fact and conclusions of law:

1. Defendant is currently competent to stand trial and possesses the mental competency "(1) to understand the nature of the proceedings, (2) to assist and cooperate with

counsel, (3) to follow the evidence, or (4) to participate in his defense." See 9 G.C.A. § 7.37(a)(1)-(4). The Defendant's case will, therefore, not be transferred to Mental Health Court.

2. Defendant may present any diminished capacity defense at the trial of this matter.

3. Defendant is eligible for diversion through Adult Court I or III.

4. The Court shall invoke its authority under 7 GCA § 3112(a)(5) to obtain the Public Guardian's assistance to encourage the Defendant's maximum self-reliance and independence and to avoid any future criminal justice involvement and to provide any appropriate support for a successful outcome in the Defendant's pending cases.

5. A Further Proceedings hearing shall be held on __APR 18 2022__ at __9:15 a.m.__

SO ORDERED this __APR 0 7 2022__.

HONORABLE MARIA T. CENZON
Judge, Superior Court of Guam